# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Norfolk Division

| | |
|---|---|
| ADOLFO RENDON BRACAMONTES, | : |
| Petitioner, | : |
| v. | : ACTION NO. 2:09cv480 |
| LEONARD DESANTI,<br>Acting Field Office Director for Detention<br>And Removal Operations,<br>Bureau of Immigration and Customs Enforcement, | : |
| Respondent. | : |

## REPORT AND RECOMMENDATION

The Petitioner, Adolfo Rendon Bracamontes ("Rendon" or "Petitioner"), brings this petition for writ of habeas corpus relief under 28 U.S.C. § 2241, challenging his pre-removal detention by the Bureau of Immigration and Customs Enforcement office of Detention and Removal Operations ("BICE"). The matter was referred to the undersigned United States Magistrate Judge[1] pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72(b) of the Federal Rules of Civil Procedure.

Rendon has been held in custody, without bond, contesting his removal since August 11, 2009. When the Immigration Court denied his request for bond, Rendon filed this habeas challenge to his continued detention. After preliminary orders in this Court, named respondents who were unrelated to Rendon's pre-removal detention were dismissed. The BICE then filed a response to the petition on December 14, 2009. Rendon replied on December 30, 2009 and both parties submitted supplemental authority by February 23, 2010. The Court held a hearing with counsel and Rendon

---

[1] The petition was originally referred by a United States District Judge to United States Magistrate Judge James E. Bradberry. As a result of Judge Bradberry's retirement, the matter was reassigned to United States Magistrate Judge Douglas E. Miller, his duly appointed successor.

1

present on June 11, 2010. For the reasons set forth below, the Court recommends that Rendon's petition be granted in part, and that the BICE be ordered to provide Rendon with an individualized bond hearing within ten days of this Court's Final Order.

## FACTUAL AND PROCEDURAL HISTORY

Rendon, a native and citizen of Mexico, is a legal permanent resident (LPR) of the United States. He has lived in the United States since 1976, and received LPR status on May 11, 1990. (Pet., ¶ 16).

On October 17, 1998, Rendon was convicted in the Norfolk Circuit Court of malicious wounding, a felony for which he was sentenced to serve ten years in prison with seven years suspended. (Pet., ¶ 17 and Ex. 2). He served his active sentence and was released from custody in 2001. He also satisfactorily completed his supervised probation, and was discharged from supervision by the Norfolk Court on June 23, 2004. (Pet., Ex. 4).

Rendon concedes that his felony conviction may render him subject to deportation under 8 U.S.C. § 1227(a)(2)(A)(iii), however, the government took no action to remove him until eight years after his release from custody, and five years after his release from supervision. In January, 2009, Rendon's wife, a United States citizen, submitted a petition and application to readjust his status. The application sought a waiver of Rendon's felony conviction under INA Section 212(h), 8 U.S.C. § 1182(h), which permits waiver of the aggravated felony bar in certain circumstances.

On August 11, 2009, when Rendon arrived at the United States Customs and Immigration Service ("the Service") for an interview related to his waiver application, BICE agents detained him pursuant to a Notice to Appear ("NTA") issued on the same day. Thereafter, Rendon, by counsel, filed a request for a bond hearing before an immigration judge ("IJ"). On September 10, 2009, the IJ ruled that Rendon was subject to mandatory detention under 8 U.S.C. § 1226(c) (Resp. Brief, Ex. 2). As a result, the IJ made no individualized determination of whether Rendon posed a risk of flight or a danger to the community. Rendon appealed the IJ's denial of bond to the Board of

2

Immigration Appeals, which affirmed the IJ's decision without opinion on October 27, 2009. (Resp. Brief, Ex. 15).

Concurrently with the appeal of his bond status, Rendon has prosecuted his claim for waiver of the aggravated felony bar under 8 U.S.C. § 1182(h). The government opposed the waiver request and filed a motion to pre-termit the proceeding, arguing that Rendon did not qualify for relief under the statute. On October 27, 2009, the IJ granted the government's motion to pre-termit, concluding that Rendon was not entitled to a waiver of the aggravated felony bar because he had been "admitted" to the country legally at the time he was granted LPR status in 1991, and the aggravated felony conviction occurred after that admission. (Resp. Brief, Ex. 3). The IJ rejected Rendon's argument that his "admission" occurred separately from the grant of LPR status – which he obtained by applying to adjust status after a lengthy period of pre-adjustment legal residency. The same IJ order directed that Rendon be removed to Mexico pursuant to the charge contained in the original NTA. (Resp. Brief, Ex. 3, p. 4). Rendon appealed the adverse ruling of the IJ to the BIA on November 5, 2009. That matter was fully briefed as of January 29, 2010, and remains before the BIA for decision as of June 11, 2010 when the parties appeared before this Court on Rendon's request for habeas relief from detention.[2]

Until a decision on Rendon's removal is rendered, his detention is governed by 8 U.S.C. § 1226 which applies to aliens whose removal is sought but not yet finally determined. Once the removal decision is final, detention during the "removal period" is governed by 8 U.S.C. § 1331. Both statutes permit the BICE to release certain aliens and detain others, and both classify categories of aliens subject to mandatory detention. Rendon argues that he is not subject to the mandatory detention language found in 8 U.S.C. § 1226(c) because the BICE did not detain him

---

[2] Both parties address the issue of Rendon's entitlement to the § 1182(h) waiver in their briefs before this Court. By prior order the Court dismissed the defendants unrelated to Rendon's pre-removal detention and his counsel has conceded their dismissal limits "this Court's review of the issue of adjustment of status". (Pet. Reply, p. 9). Without addressing the merits of petitioner's argument that habeas may – in some circumstances – permit District Court review of the adjustment of status issue, in this case, the appropriate remedy for review of the BIA's eventual final decision on removal would be a direct action in the Fourth Circuit. *Sang Y. Lee v. USCIS*, No. 08-1659, 2010 WL 279602 (4th Cir. Jan. 25, 2010); 8 U.S.C. § 1252(a)(2)(B). The Court therefore recommends that any claim in this habeas petition addressing the merits of Rendon's entitlement to waiver or eventual removal be dismissed without prejudice.

3

when he was released from custody but eight years after his release. Alternatively, he claims that due process requires that he be released or at least receive an individualized bond hearing as a condition of his now-lengthy continued detention. According to this due process argument, Rendon will not be subject to a final order of removal until his waiver request under 8 U.S.C. § 1182(h) is finally resolved – by the Fourth Circuit, if necessary – and the length of that detention without an individualized finding of potential danger or risk of flight violates due process.

The government counters that Rendon is subject to mandatory detention under the provisions of § 1226(c) regardless of how long after his release he came into BICE custody. Further, the government claims that the U.S. Supreme Court decision in *Denmore v. Kim*, 538 U.S. 510 (2003), which upheld the constitutionality of mandatory detention under § 1226(c) forecloses Rendon's due process arguments.

For the reasons set forth below, the Court agrees with Rendon, and recommends that the BICE be ordered to provide him with an individualized bond hearing within ten days of the date of this Court's final order.

## ANALYSIS

To obtain habeas relief under 28 U.S.C. § 2241, the petitioner must demonstrate that he is being detained "in violation of the Constitution or laws of the United States." 28 U.S.C. § 2241(c)(3). Although the Immigration and Naturalization Act precludes judicial review of "discretionary judgments" made with regard to the detention or release of any alien, or the grant, revocation or denial of bond or parole, that section does not limit habeas review of mandatory detention under § 1226(c). *Denmore*, 538 U.S. at 517. *Denmore* involved only a due process challenge, and not the statutory construction argument made here, however, District Courts also retain jurisdiction to consider a habeas challenge to the statutory framework purportedly underlying detention. *Waffi v. Loiselle*, 527 F. Supp. 2d 480, 484 (E.D. Va. 2007) (citing *Hatami v. Chertoff*, 467 F. Supp. 2d 637, 640-41 (E.D. Va. 2006) (and other citations omitted)). Indeed, the government concedes in this case that habeas review of Rendon's pre-trial detention is appropriate. (Resp. Brief, p. 7).

4

The government stipulates that Rendon received no individualized hearing on bond, and argues that the IJ lacked discretion to grant him bond under the mandatory detention language in § 1226(c). Accordingly, the application of that statute to Rendon's detention is central to correctly deciding this habeas petition. The statute has been interpreted by the BIA, the agency charged with administering it, as requiring mandatory detention of criminal aliens subject to removal regardless of whether they are immediately taken into BICE custody. *Matter of Rojas,* 23 B.I.A. 117 (2001) WL 537957, at * 117.

When a District Court examines an agency construction of a statute which the agency administers, the first question is always whether Congress has directly addressed the issue presented. *Chevron USA, Inc. v. Nat'l Res. Def. Council, Inc.,* 467 U.S. 837, 842-43 (1984). "If the intent of Congress is clear that is the end of the matter, and the court as well as the agency must give effect to the unambiguously expressed intent of Congress." *Id.* at 842. If the statute is silent or ambiguous "with respect to this specific issue" the District Court should defer to the agency construction so long as it is a reasonable interpretation and not contrary to Congressional intent. *Id.*

Rendon claims that the IJ, and later the BIA, incorrectly applied § 1226(c) which, he argues, requires mandatory detention of certain classes of deportable aliens only when they are taken into custody immediately, or shortly after their release. The government contends that the IJ correctly applied the law or alternatively that ambiguity in the statute requires that the Court grant *Chevron* deference to the agency's interpretation. Because the precise language used by Congress is critical to examining Rendon's claims, a lengthy excerpt of the statute follows. As relevant here, the section states:

> §1226 Apprehension and detention of aliens.
>
> . . .
>
> (c) Detention of criminal aliens
>
> (1) Custody
>
> The Attorney General shall take into custody any alien who --

(A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,

(B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,

(C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence [d] to a term of imprisonment of at least 1 year, or

(D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,

when the alien is released, without regard to whether the alien is released on parole, supervised, release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

(2) Release

The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

From its title this statute is plainly directed at addressing congressional concern over the apprehension and detention of aliens properly subject to removal. Although not reproduced in this Report and Recommendation, subsections (a) and (b) of § 1226 help clarify the statutory scheme. Those subsections authorize the Attorney General (or his designate, the BICE) to detain aliens pending a decision on removal, and to grant bond and determine conditions of bond. Those sections also permit the BICE to revoke bond and re-arrest and detain aliens during removal proceedings. Thus, the first two subsections of § 1226 give the BICE broad latitude to detain and process aliens believed deportable under familiar standards of pre-removal release.

Subsection (c), which defines those aliens subject to mandatory detention, is composed of two paragraphs. Paragraph (1) imposes on the Attorney General a requirement to "take into custody" any alien described in subparagraphs (A) through (D), "when the alien is released" regardless of the character of the release. Paragraph (2) limits the Attorney General's ability to release "an alien described in paragraph (1)" to a very narrow subset of cooperating witnesses and their family members not relevant here.

Rendon argues that subsection (c) does not apply to him because he is not "an alien described in paragraph (1)". Paragraph (1) includes the four categories of criminal aliens described in subparagraphs (A) through (D) as well as the concluding clause beginning with the words "when the alien is released". Rendon concedes that he is described by the language in subparagraph (B) because he committed a qualifying offense. He claims, however, that he is not "an alien described in paragraph (1)" because the "when . . . released" language limits mandatory detention to those criminal aliens taken into BICE custody "when . . . released", or immediately upon their release from whatever sentence was imposed on the qualifying conviction.

No Circuit Court has addressed this precise issue[3], but a large majority of District Courts examining the language agree with Rendon. *Waffi v. Loiselle*, 527 F. Supp. 2d 480 (E.D. Va. 2007); *Scarlett v. United States Dep't of Homeland Sec.*, 632 F. Supp. 2d 214 (W.D.N.Y. 2009); *Khodr v. Adduci*, No. 10-CV-10505, 2010 WL 931860, at *1 (E.D. Mich. Mar. 10, 2010); *Quezada-Bucio v. Ridge*, 317 F. Supp. 2d 1221 (W.D. Wash. 2004); *Dang v. Lowe*, No. 1:CV-10-0446, 2010 WL 2044632 (M.D. Pa. May 7, 2010).

---

[3] The First Circuit interpreted the "when . . . released" language to reject the government's claim that mandatory detention applied to deportable aliens "released" from unrelated custody, who had committed their disqualifying offenses and been released from custody on those offenses before the effective date of the statute. *Saysana v. Gillen*, 590 F.3d 7 (1st Cir. 2009). Though similar to the recommendation reached here, the First Circuit's opinion was also informed by Congress' express conclusion that the statute should not be applied retroactively, *id.* at 10, a factor not present in this case.

Several of these courts note the far simpler constructions available to Congress if it intended that aliens could be detained without bond "at any time after" release, *Khodr*, 2010 WL 931860, at *4, or "in the event that" the alien is released, *Waffi*, 527 F. Supp. 2d at 487; or "regardless of when the alien is released," *Quezada-Bucio*, 317 F. Supp. 2d at 1224. Because Congress did not adopt any of these more natural expressions of the meaning the government urges, it seems unlikely that meaning was intended.

The various District Courts opinions also note that the reading advanced by the government would render the phrase "when the alien is released" mere surplusage. If, as the respondent here argues, Rendon is subject to mandatory detention solely as a result of his qualifying offense, regardless of the time he comes into BICE custody, the concluding clause in subparagraph (1) serves no purpose. *Waffi*, 527 F. Supp. 2d at 488; *Scarlett*, 632 F. Supp. 2d at 219.

A few District Courts, however, find the language ambiguous, and defer to the agency's contrary interpretation. *Serrano v. Estrada*, No. 3:01CV1916M, 2002 WL 485699 (N.D. Tex. Mar. 6, 2002); *Sulayo v. Shanahan*, No. 09CV7347, 2009 WL 3003188, (S.D.N.Y. Sept. 15, 2009). That interpretation, which was followed by the IJ at Rendon's bond hearing, holds that the "when . . . released" clause is irrelevant to defining which aliens are subject to mandatory detention – but serves only to specify the time at which the BICE has authority to detain. *Sulayo*, 2009 WL 3003188, at *7.

In reaching its conclusion that the "when . . . released" clause is irrelevant to defining those subject to mandatory detention, the BIA focused on the second paragraph of subsection (c). According to its divided *en banc* pronouncement in *Matter of Rojas*, the limitation on the Attorney General's ability to grant bond arises from this second paragraph, which prohibits release of "any alien described in paragraph (1)". The BIA majority found that the concluding expression,

8

beginning with the words "when the alien is released", should not be read to modify the categories of individuals described in subsections (A) through (D), but only as a description of when the Attorney General's duty to act arose. Read in this way the "when . . . released" phrase is intended to describe only the type of release – and foreclose arguments by removable aliens that their continuing supervision, parole, or probation would preclude their mandatory detention. In other words, the BIA majority ruled, the "when . . . released" language modifies only the command to the Attorney General and serves to define date upon which that command arises. *Matter of Rojas*, 2001 WL 537957, at *125.

With respect to the BIA and District Authority deferring to its interpretation, this is not what the statute states. To begin with, the "when . . . released" phrase is plainly part of paragraph (1) of subsection (c). An "alien described in paragraph (1)" is described by all of the language in that paragraph. Moreover, the "when released" clause immediately follows the descriptive paragraphs (A) through (D). In English, the order of words in a sentence matters, and as a general rule "[m]odifying words tend to do their work on whatever you put them near." Richard C. Wydick, Plain English For Lawyers 49 (4th ed. 1998). As the "when released" clause directly follows subparagraphs (A) and (D), it operates as a modifier on the classes of aliens described in those subparagraphs. The punctuation of the section also suggests that this is a correct reading, as subsections (A) and (D) are separated from the first clause by a dash – and from the last clause by a comma.

Beyond its grammatical correctness, the "when . . . released" language must modify the classes of aliens subject to mandatory detention as the date of any particular alien's release was essential to implementation of the statute's express non-retroactivity. As several courts have noted, Congress did not intend for the mandatory detention provisions to apply retroactively – to aliens

9

who were released for disqualifying convictions before the effective date of the statute. *Saysana*, 590 F. 3d at 10; *Thomas v. Hogan*, No. 1:08CV417, 2008 WL 4793739 (MD. Pa. 2008); *Alikhani v. Fasano*, 70 F. Supp. 2d 1124, 1132 (S.D. Cal. 1999); *Velasquez v. Reno*, 37 F. Supp. 2d 663, 670-71 (D.N.J. 1999). If the "when . . . released" clause does not modify the classes of aliens subject to mandatory detention, it is impossible to enforce this mandate.

Respondent argues that a reading which requires the BICE to take aliens into custody immediately upon their release in order to invoke mandatory detention would frustrate the purpose of the statute which emphasizes the apprehension and detention of deportable aliens. As the previous paragraphs demonstrate, Congress must have intended to limit mandatory detention to those detained immediately or shortly after their release, as evidenced by the language it chose. Moreover, the statutory scheme still permits the BICE to take into custody and detain any alien believed removable – on the enumerated grounds or otherwise – and vests broad authority in the Attorney General to administer individualized conditions of release consistent with the due process protection, due all persons present in the United States. *See Zadvydas*, 533 U.S. at 690-91. In other words, the construction adopted by nearly every District Judge and Magistrate Judge examining the statutory language simply recognizes the factual difference between certain aliens – whom Congress recognized as dangerous or a flight risk, and others already released into the community who come into BICE custody months or even years after their release. *See Matter of Rojas*, 23 I&N Dec. at 138 (Rosenberg, dissenting).

The undersigned expresses no opinion on whether "when . . . released" means at the exact moment of release or at some reasonable number of hours or days after release. *See Khodr*, 2010 WL 931860, at *6 (concluding that immediacy contemplates a reasonable period of time for the Attorney General to take the alien into custody). This Court need not resolve that secondary issue

of interpretation as Rendon's mandatory detention, some eight years after his release, bears no relation to the date of his release and is therefore unreasonable under any definition of the term.

Rendon also contends that his mandatory detention under § 1226(c) violates the Due Process Clause of the Fifth Amendment, which "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Properly applied, mandatory detention during removal proceedings is constitutionally permissible. *Denmore*, 538 U.S. at 531. However, the Supreme Court has recognized that "[t]he serious constitutional problem arising out of a statute that . . . permits an indefinite, perhaps permanent, deprivation of human liberty without any [procedural] protection is obvious." *Zadvydas*, 533 U.S. at 692.

In *Zadvydas*, the Supreme Court considered a Fifth Amendment due process challenge to § 1231(a)(6), which governs detention following the post-removal period of detention.[4] The Court held that § 1231(a)(6) authorized detention beyond the removal period for only such time as is reasonably necessary to secure the alien's removal. *Id.* at 699. Recognizing that some "leeway" should be given to the immigration-related expertise of the Executive branch, the Court determined that a six-month period of detention following the removal period was constitutional. *Id.* at 701. In fixing the six-month time period, the Court stated that there was "reason to believe . . . that Congress previously doubted the constitutionality of detention for more than six months." *Id.*[5]

---

[4] "An alien ordered removed who is inadmissible . . . [or] removable . . . or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the [ninety-day] removal period . . . ." 8 U.S.C. § 1231(a)(6).

[5] While *Zadvydas* addressed a challenge to detention under § 1231 and not § 1226, the reasoning is instructive and, as made evident in *Denmore*, relevant in evaluating due process challenges to § 1226. Furthermore, the Court notes that in most cases the statute governing an alien's detention changes depending upon the posture of his deportation proceedings. In other words, often times an alien will be detained at one point under § 1231 and at another under § 1226.

After *Zadvydas*, the Court considered a due process challenge to § 1226(c). *Denmore*, 538 U.S. at 531. In upholding the constitutionality of § 1226(c) for the limited period necessary to complete removal proceedings, the Court determined that the detention mandated by § 1226(c) is materially different in two respects from the detention considered in *Zadvydas*. First, the Court noted that *Zadvydas* involved petitioners for whom removal was no longer practically obtainable, so detention under § 1231(a)(6) no longer served its purported immigration purpose, whereas mandatory detention of deportable criminal aliens pending removal proceedings served the purpose of preventing such aliens from fleeing prior to such proceedings. *Id.* at 527-28. Second, the Court found that, unlike the situation in *Zadvydas*, the detention mandated by § 1226(c) is of a much shorter duration. *Id.* at 528. According to the Court, detention under § 1226(c) has a definite termination point--the determination of removability--and, in the majority of cases, lasts for less than the ninety-day period considered presumptively reasonable in *Zadvydas*. *Id.* at 529. Citing statistics from the Executive Office for Immigration Review, the Court found that detention under § 1226(c) lasts approximately ninety days in a majority of cases, and approximately five months in the minority of cases in which the alien chooses to appeal. *Id.* at 530. Accordingly, the Court upheld as constitutional the "limited period" of detention--approximately six months--that was being challenged in *Denmore*. *Id.* at 531.

In upholding a six-month period of detention under § 1226(c), the Court found that detention was for limited duration, with a definite termination point was constitutional. *Id.* at 529-30. In the present case, Rendon has been in custody for more than ten months--since August 11, 2009--longer than the period upheld in *Denmore* and the presumptively reasonable period upheld in *Zadvydas*. Rendon's appeal to the Board of Immigration Appeals of the IJ's decision to pre-termit the waiver request was fully briefed as of January 29, 2010 and has

therefore been pending for nearly five months.[6] At the June 11, 2010 hearing on this matter, neither party was able to relay to the Court any information regarding a timeline for the resolution of petitioner's appeal. In addition, if the Board of Immigration Appeals remands the case for additional fact finding, Rendon could be detained for a much longer period of time. In short, it cannot be said that Rendon's detention under § 1226(c) is one of limited duration. While conceivably a termination point (*i.e.*, a decision as to whether Rendon is removable) could be imminent, it appears unlikely given the lengthy period of time he has already been in custody, and the fact that the IJ did not reach the merits of his waiver application at the initial hearing. These facts are troubling and raise serious constitutional concerns. While the Supreme Court upheld the periods of detention at issue in both *Denmore* and *Zadvydas*, the Court also acknowledged the due process concerns inherent in any statute that would authorize indefinite or permanent detention. *Denmore*, 538 U.S. at 531 – 532 (Kennedy J., concurring). At least one District Court has concluded that prolonged detention under 1226(c), even after *Denmore* raises due process concerns which must be addressed by individualized bond hearings. *Monestime v. Reilly*, No. 10-CV-1374, 2010 WL 1427672, at *1 (S.D.N.Y. Apr. 9, 2010). Petitioner's removal proceedings have been anything but expeditious. Without any individual determination of dangerousness or risk of flight, a ten month detention purportedly under the authority of 8 U.S.C. 1226, with no individual bond hearing exceeds the bounds of due process and must be addressed by an individualized bond hearing.

---

[6]The Court notes that any delay in the resolution of petitioner's appeal is at least in part due to a motion to extend the briefing schedule filed by the Department of Homeland Security. Rendon has not sought any delay in the final resolution of removal proceedings. (Pet. Reply, Ex. 11). Cf. *Denmore*, 538 U.S. at 530 n.15.

## RECOMMENDATION

Because Rendon was not detained when released from custody, his detention pending final administrative action on his removal is governed by 8 U.S.C. §1226(a) and not, as the IJ and BIA held, by 8 U.S.C. § 1226 (c). The IJ denied bond solely on the basis of this incorrect application of the laws of the United States. In addition, Rendon's detention for more than ten months under a mandatory detention scheme with no bond hearing and no reasonably foreseeable termination point, is not constitutionally sound. As a result, the Court recommends that the petition for habeas relief be granted in part and that the respondent be ordered to provide Rendon with an individualized bond hearing within 10 days of the date of this Court's final order. As the issues of his removal have not been finally resolved, the Court also recommends that the portion of the petition requesting action or review of Rendon's request for a waiver under 8 U.S.C. § 1182(h) be dismissed without prejudice.

Finally, Rendon has requested an award of attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(B). In order to expedite the relief recommended in this Report the undersigned further recommends that the Court retain jurisdiction of Rendon's EAJA fee request for further briefing and argument after entry of a Final Order on this recommendation.

## REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2. A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk shall mail a copy of this Order to all counsel of record.

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

June 16, 2010

## CLERK'S MAILING CERTIFICATE

A copy of the foregoing Report and Recommendation was mailed this date to the following:

Satnam Singh
Law Office of Satnam Singh
5739 Northampton Blvd.
Norfolk, VA 23502-5507
Counsel for Adolfo Rendon Bracamontes

Virginia Lynn Van Valkenburg
United States Attorney Office
101 W. Main Street
Suite 8000
Norfolk, VA 23510

                                        Fernando Galindo,
                                        Clerk of Court

By: _____
                         Deputy Clerk

                   _____, 2010